# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY CARTER,<br><br>        Plaintiff,<br><br>    v.<br><br>WILLARD L. JACKSON, et al.,<br><br>        Defendants. | Case No. 1:23-cv-01775-KES-SAB<br><br>ORDER DENYING PLAINTIFF'S MOTION TO SERVE BY PUBLICATION AND GRANTING PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO COMPLETE SERVICE IN PART<br><br>ORDER REQUIRING PLAINTIFF TO FILE A NOTICE OF BANKRUPTCY<br><br>ORDER VACATING HEARING IMPROPERLY SET FOR MAY 28, 2024<br><br>(ECF Nos. 29, 30, 31, 32, 33, 36, 38) |

**I.**

**INTRODUCTION**

Currently before the Court is Plaintiff Jeffrey Carter's second motion for service by publication on Defendants Willard L. Jackson, Robert Shumake, Nicole T. Birch, 420 Real Estate, LLC., Transatlantic Real Estate, LLC, and BANGI, Inc. (Pl.'s Mot. Serve Publication ("Mot."), ECF No. 29); and Plaintiff's motion for an extension of time to serve the complaint (Pl.'s Mot. EOT Serve ("Mot. EOT"), ECF No. 38). The Court finds this matter suitable for decision without oral argument. See Local Rule 230(g). Accordingly, the hearing set for May 28, 2024 will be vacated and the parties will not be required to appear at that time.

Having considered the moving papers, the declarations and exhibits attached thereto, the

opposition filed by Defendant Vicent Petrescu,[1] as well as the Court's file, the Court denies Plaintiff's motion for service by publication without prejudice and shall grant, in part, an extension of time to serve the six unserved Defendants.

## II.

## BACKGROUND

On December 27, 2023, Plaintiff filed this class action against Defendants Willard L. Jackson, Nicole T. Birch, Vicent Petrescu, 420 Real Estate, LLC, Trucrowd Inc., Transatlantic Real Estate, LLC, and Bangi Inc.  (ECF No. 1.)  Plaintiff subsequently filed two amended complaints.  (ECF Nos. 4, 6.)  Plaintiff's first amended complaint, filed on December 28, 2023, added Defendant Robert S. Shumake.  (ECF No. 4.)  Plaintiff alleges eight causes of action relating to securities fraud and asserts eight state law claims for breach of contract, fraudulent misrepresentation, breach of fiduciary duty, unlawful business practices, negligence, conversion, civil conspiracy to commit fraud, and "constructive trust or equitable lien."  (ECF No. 6.)

On March 11, 2024, Plaintiff filed summonses reflecting that Defendants Petrescu and TruCrowd were served on January 19, 2024.  (ECF No. 12 at 1-3, 5-7.)  On February 12, 2024, Defendant Petrescu filed a document entitled "The Defendant's Answer to the Complaint."  Defendant TruCrowd has not filed a response or otherwise appeared in this action.

On March 28, 2024, the Court ordered that Plaintiff file a status report addressing the status of the action.  (ECF No. 15.)  On March 29, 2024, Plaintiff returned summonses evincing six Defendants have not been served.  (ECF Nos. 16, 17, 18, 19, 20, 21.)  Plaintiff also filed a motion for thirty-day extension of time to serve the six Defendants by way of substitute service and publication.  (ECF No. 22.)  On April 2, 2024, the Court denied Plaintiff's motion as procedurally and substantively deficient and granted Plaintiff the opportunity to file a second motion no later than April 9, 2024.  (ECF No. 24.)

On April 9, 2024, Plaintiff filed the instant motion for service by publication.  (ECF No.

---

[1] On April 17, 2024, Mr. Petrescu, proceeding *pro se*, filed a document entitled "Motion to Deny Plaintiff, Jeffrey Carter's Second Application for Service by Publication."  (ECF No. 36.)  The Court construes this filing as an opposition to Plaintiff's motion for service by publication.

2

29, 30, 31, 32, 33.)[2]  On April 17, 2024, Defendant Petrescu filed his opposition. (ECF No. 36.) Prior to his deadline to file a reply brief, Plaintiff filed a motion for 90-day extension of time. (ECF No. 37.)  No reply brief was filed by Plaintiff to Defendant Petrescu's opposition to Plaintiff's motion to serve by publication and the deadline to do so has expired.  No opposition to Plaintiff's motion for 90-day extension of time to serve the six Defendants by publication was filed and the deadline to do so has expired.

## III.

## LEGAL STANDARD

Rule 4(m) provides that "If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m).  "But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Id.

Under the Federal Rules of Civil Procedure, an individual can be served by any of the following: "(A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2).  Rule 4 also provides that proper service can be made by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1).

The California Code of Civil Procedure provides that: "[a] summons may be served by publication if upon affidavit it appears to the satisfaction of the court in which the action is pending that the party to be served cannot with reasonable diligence be served in another manner

---

[2] For unknown reasons, Plaintiff also filed four sets of exhibits as independent motions.  (See 30, 31, 32, 33.)  All references to Plaintiff's arguments will be to the document containing Plaintiff's argument (ECF No. 29) filed on April 9, 2024.  Plaintiff fails to provide pinpoint references to the exhibits within his motion, which required burdensome efforts from the Court to search each document in the four separately filed "motions" in addition to those attached to Plaintiff's counsel's declaration.  The Court cautions Plaintiff that it will disregard independently filed exhibits that are unenumerated or not cited in the motion in future filings.

3

specified in this article and that either: (1) A cause of action exists against the party upon whom service is to be made or he or she is a necessary or proper party to the action." Cal. Civ. Proc. Code § 415.50(a)(1).

"Under California law, '[c]onsistent with the notions of fair play and due process, substituted service by publication is a last resort when reasonable diligence to locate a person in order to give him notice before resorting to the fictional notice afforded by publication has been exercised.' " Indian Hills Holdings, LLC v. Frye, 337 F.R.D. 293, 299 (S.D. Cal. 2020) (quoting Calvert v. Al Binali, 29 Cal.App.5th 954, 963 (2018) (alteration in quoting source)). " 'Personal service remains the method of choice under the statutes and the constitution,' and '[w]hen substituted or constructive service is attempted, strict compliance with the letter and spirit of the statutes is required.' " Id.

Service by publication can be effectuated under California law as follows:

> (b) The court shall order the summons to be published in a named newspaper, published in this state, that is most likely to give actual notice to the party to be served. If the party to be served resides or is located out of this state, the court may also order the summons to be published in a named newspaper outside this state that is most likely to give actual notice to that party. The order shall direct that a copy of the summons, the complaint, and the order for publication be forthwith mailed to the party if his or her address is ascertained before expiration of the time prescribed for publication of the summons. Except as otherwise provided by statute, the publication shall be made as provided by Section 6064 of the Government Code unless the court, in its discretion, orders publication for a longer period.

Cal. Civ. Proc. Code § 415.50(b); see also Cal. Gov't Code § 6064 ("Publication of notice pursuant to this section shall be once a week for four successive weeks. Four publications in a newspaper regularly published once a week or oftener, with at least five days intervening between the respective publication dates not counting such publication dates, are sufficient.").

## IV.

## DISCUSSION

Plaintiff moves the Court for authorization to serve Defendants Willard Jackson, Nicole Birch, 420 Real Estate, LLC, Transatlantic Real Estate, LLC, BANGI, Inc., and Robert Shumake ("Unserved Defendants"), by publication and for a ninety-day extension of time to do so. For the

4

reasons set forth herein, the Court finds Plaintiff has failed to show that a cause of action exists against the Unserved Defendants or that reasonably diligent efforts have been expended to locate and serve each Unserved Defendant.

### A. Hearing Improperly Set for May 28, 2024

The Court admonished Plaintiff in his first motion for publication for failing to comply with Local Rules when filing motions and setting hearings. (ECF No. 24 at 2 (citing L.R. 230 ("The matter shall be set for hearing on the motion calendar of the Judge or Magistrate Judge to whom the action has been assigned or before whom the motion is to be *heard not less than thirty-five (35) days after service and filing of the motion")*).) In filing his motion for extension of time to serve the Unserved Defendants by publication on April 26, 2024, Plaintiff again set a hearing less than thirty-five days later on May 28, 2024. When parties disregard Local Rules, Federal Rules of Civil Procedure, and prior orders, it causes this heavily impacted Court to issue unnecessary orders. (See, e.g., ECF Nos. 15, 24, 28.) The Court cautions Plaintiff that continued disregard of the Federal Rules of Civil Procedure, Local Rules, and previous orders issued by this Court will result in sanctions. See L.R. 110.

### B. Plaintiff Has Not Met His Burden to Show a Valid Cause of Action Exists Against the Unserved Defendants

Under California law, "[f]or the purpose of service by publication, the existence of a cause of action is a jurisdictional fact." Harris v. Cavasso, 68 Cal.App.3d 723, 726 (1977). The requesting party must submit an affidavit containing a statement of some fact that would be legal evidence that the cause of action exists for the court to have jurisdiction to order service by publication. Id. "When jurisdiction is sought to be established by constructive service, the statutory conditions for such service must be strictly complied with or the judgment is subject to collateral attack." Donel, Inc. v. Badalian, 87 Cal.App.3d 327, 334 (1978).

The affidavit filed in support of the motion for substitute service must contain independent evidentiary support in the form of a sworn statement of facts to support a cause of action against the defendant, and if it does not, the Court does not have jurisdiction to order service by publication. Harris, 68 Cal.App.3d at 726–27; see also Indian Hills Holdings, LLC,

337 F.R.D. at 302 ("Section 415.50(a)(1) requires that the plaintiff provide independent evidentiary support, in the form of a sworn statement of facts, for the existence of a cause of action against each defendant whom service by publication is requested.")  (quoting Rose v. Seamless Fin. Corp. Inc., No. 11CV240 AJB KSC, 2013 WL 1285515, at *3 (S.D. Cal. Mar. 26, 2013)).

Here, Plaintiff submits a procedurally improper and substantively deficient declaration. Local Rule 131(f) requires that affidavits by non-attorneys that are submitted in electronic format bearing a "/s/" signature must include "a statement that counsel has a signed original," and imposes a duty on counsel to maintain the original signature.  Here, no statement confirms Plaintiff signed a copy of his declaration.  Given the Court has substantive questions regarding Plaintiff's declaration, should Plaintiff file a renewed motion for service by publication, Plaintiff's affidavit must comport with the Local Rules.

The Court notes that Plaintiff attached to the operative complaint in this action a civil complaint by the United States Securities and Exchange Commission ("SEC") against Robert Samuel Shumake, Jr., Willard L. Jackson, Nicole T. Birch, 420 Real Estate, LLC, Vicent Petrescu, and TruCrowd, Inc. in an action that was filed in 2021 in the United States District Court for the Eastern Michigan District.  (ECF No. 6 at 58-97.)  Therein, the SEC filed a complaint alleging (1) violations of Section 17(a) of the Securities Act against Shumake, Jackson, Birch, and 420 Real Estate; (2) Violations of Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5 against Shumake, Jackson, Birch, and 420 Real Estate; (3) Violations of Section 5(a) and (c) of the Securities Act against Shumake and Birch as to Transatlantic Real Estate; (4) Violations of Section 5(a) and (c) of the Securities Act against Shumake, Jackson, and 420 Real Estate; (5) Aiding and Abetting Violations of Section 17(a) of the Securities Act against Shumake; (6) Aiding and Abetting Violations of Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5 against Shumake; (7) Aiding and Abetting Violations of Sections 5(a) and (c) of the Securities Act against Shumake; and (8) Violations of Section 4A(a)(5) of the Securities Act and Rules 301(c)(2) against Petrescu and TruCrowd.  (Id.)  Not only are Plaintiff's first eight causes of action in the instant action identical to those alleged by the SEC, but a

majority of the allegations within Plaintiff's operative complaint are verbatim of those alleged by the SEC.  (Compare ECF No. 6 at 4-42 with id. at 58-97.)

"[A]n affidavit in support of a request for service by publication 'must state facts based on knowledge and not on mere hearsay.' " Friends of Del Mar Bluffs v. N. Cnty. Transit Dist., No. 22CV503-LL-BGS, 2022 WL 1227285, at *7 (S.D. Cal. Apr. 26, 2022) (quoting 4 Witkin, Cal. Procedure (5th ed. 2019) Actions § 1037).  Relevant to the instant motion, Plaintiff affirms in his declaration that the facts contained therein are "based on personal knowledge." (Declaration of Jeffrey Carter Supp. Pl.'s Mot. ("Carter Decl."), ECF No. 29-1 at 2.)  However, Plaintiff's twenty-one page declaration appears to be a copied and pasted version of his complaint, which, as stated above, is itself largely copied verbatim from the 2021 SEC action in another district court.  Without more, the Court is hard-pressed to accept that Plaintiff has "personal knowledge" of each fact stated within his declaration.  For example, the declaration fails to explain how Plaintiff has "personal knowledge" that "[f]rom September 2018 through May 2019, Transatlantic Real Estate raised $1,020,100 from approximately 2,000 investors in multiple states through TruCrowd's platform," when Plaintiff declares he purchased a $300 convertible note from 420 Real Estate in August 2019.  (Compare Carter Decl. at ¶ 55 with ECF No. 6 at 71 ¶ 44.)  Plaintiff's declaration also fails to detail, for example, how he has "personal knowledge" that "Shumake and Birch diverted $358,311–or 35% of the total offering proceeds— to Birch and her firm, H.B. Associates" (compare Carter Decl. at ¶ 57 with ECF No. 6 at 71 ¶ 46) or that "Shumake and Jackson knew that disclosure of Shumake's criminal past could hinder fundraising" (compare Carter Decl. at ¶ 68 with ECF No. 6 at 73 ¶ 57).

Even if the Court credits Plaintiff as having personal knowledge of every fact contained within his declaration, Plaintiff fails to adequately establish what facts, if any, could support a cause of action *by Plaintiff*—not by the SEC—against the six Unserved Defendants to meet the requirements of Section 415.50.  Rather, Plaintiff avers few facts supporting his own seven federal securities causes of action[3] against the Unserved Defendants.  The only mention of

---

[3] Plaintiff alleges sixteen causes of action, eight of which allege violations of federal securities laws.  The eighth cause of action only pertains to Defendants TruCrowd and Petrescu.  (ECF No. 6 at 40-41.)

7

Plaintiff's cause of action is found in paragraphs eighty-six through eighty-eight of his declaration wherein he states:

> 86.  On August 8, 2019, I signed a subscription contract to buy a convertible note from 420 Real Estate LLC. This note is valued at $300. To break it down further, a convertible note is a type of financial instrument that can be converted into shares of the company's stock at a later date. By entering into this agreement, the plaintiff essentially agreed to loan $300 to 420 Real Estate LLC with the potential to convert that debt into ownership shares of the company in the future.
>
> 87.  The convertible note has been set to mature on June 30, 2020. This means that by this date, the full amount of the note, along with any accrued interest, will be due unless it has been converted into shares of the company before then. The note accrues interest at a rate of 15% per year. Additionally, there's a provision known as the Conversion Option. This allows the holder of the note, upon conversion, to purchase shares at a discounted rate of 10% compared to the prevailing market price at the time of conversion. However, it's up to the company's discretion whether or not they choose to offer this conversion option.
>
> 88.  In the subscription contract, one of the parties identified as a defendant is the issuer of the note. Specifically, the CEO of 420 Real Estate LLC, Willard Jackson is highlighted as the main representative and primary entity responsible for issuing the note. This means that any obligations, responsibilities, or legal implications related to the note's issuance and terms would primarily fall under the purview of the CEO of 420 Real Estate LLC.

(Carter Decl. ¶¶ 86-88.)

Thus, over four years prior to filing this action, Plaintiff signed a subscription contract to buy a $300 convertible note from 420 Real Estate, LLC whereby Willard Jackson was somehow "highlighted" in the contract, and the note was set to mature on June 30, 2020. (Id.) Plaintiff purports to have "personal knowledge" that no 420 Real Estate investors received any monetary return on their investment (Carter Decl. ¶ 85); however, Plaintiff fails to proffer his economic loss with loss causation. Plaintiff also does not state which Defendant, if any, made a material misrepresentation or omission that Plaintiff relied upon when buying the note.

This Court will not relitigate the SEC's 2021 action against the Defendants; rather, Plaintiff has filed a complaint in this Court alleging he has suffered a loss as a result of the Defendants' wrongful actions. It is well-established that Plaintiff must submit evidence that his

alleged cause of action exists against each Unserved Defendant for this Court to have jurisdiction to order service by publication. See Columbia Screw Co. v. Warner Lock Co., 138 Cal. 445, 446 (1903) ("The existence of a cause of action against the defendant sought to be served by publication is a jurisdictional fact, which must be shown as provided in the statute before an order for publication of summons can be made; and, if it does not so appear, the order for publication is void, and the service by publication falls with the order."). The Court finds Plaintiff fails to provide independent evidentiary support in his twenty-one page declaration to support a cause of action against the Unserved Defendants. Should Plaintiff file a renewed motion, Plaintiff must provide independent evidentiary support that a cause of action exists.

As to the state law claims, Plaintiff states in the final paragraph of his declaration that:

> 104. Based on the above-described conduct of these defendants in the Second Amended Complaint (Dkt. No. 6) there are many more causes of action such as Breach of Contract (Ninth Cause of Action); Fraudulent Misrepresentation (Tenth Cause of Action; Breach of Fiduciary Duty (Eleventh Cause of Action); Unlawful Business Practice (Twelfth Cause of Action); Negligence (Thirteenth Cause of Action); Conversion (Fourteenth Cause of Action); and Civil Conspiracy to Commit Fraud (Fifteenth Cause of Action).

(Carter Decl. ¶ 104.) Given the limited facts proffered in paragraphs eighty-six through eighty-eight, this statement is a legal conclusion that is wholly insufficient to establish any state law cause of action exist against the Unserved Defendants.

Because Plaintiff's declaration is insufficient to establish that a cause of action exists against the Unserved Defendants, the Court must deny Plaintiff's motion for service by publication.

### C. Plaintiff Failed to Demonstrate Reasonable Diligence

When a person is entitled to due process, process which is a mere gesture is not sufficient. Donel, Inc., 87 Cal.App.3d at 332; Watts v. Crawford, 10 Cal.4th 743, 749 n.5 (1995). Service by publication is appropriate only where after reasonable diligence, the defendant's whereabouts and his dwelling place or usual place of abode cannot be ascertained. Watts, 10 Cal.4th at 749 n.5. However, service by publication is a "last resort," so the courts require a plaintiff "to show exhaustive attempts to locate the defendant." Id. "Reasonable

diligence" in attempting to serve by other methods connotes:

> [A] thorough, systematic investigation and inquiry conducted in good faith . . . . A number of honest attempts to learn defendant's whereabouts or address by inquiry of relatives, friends, and acquaintances, or of an employer, and by investigation of appropriate city and telephone directories, the voters' register, and the real and personal property index in the assessor's office, near the defendant's last known location, are generally sufficient. These are likely sources of information, and consequently must be searched before resorting to service by publication. However, the showing of diligence in a given case must rest on its own facts and neither single formula nor mode of search can be said to constitute due diligence in every case.

Kott v. Superior Court, 45 Cal.App.4th 1126, 1137–38 (1996) (internal citations and quotations omitted); THC-Orange Cty. Inc. v. Valdez, No. 17-CV-01911-LB, 2017 WL 2171185, at *2 (N.D. Cal. May 17, 2017) (California requires exhaustive measures "to discover the defendant's whereabouts and confirm his property holdings, including: 'searching phone books, online people search tools, voter registries, or other common sources of information, or by hiring a private investigator'; 'contacting relatives, friends, or neighbors'; and contacting the co-defendant (who had been served) for the defendant's contact information.") (quoting Castillo-Antonio v. Azurdia, No. C-13-05709 DMR, 2014 WL 4060219 (N.D. Cal. Aug. 14, 2014)).

As a threshold matter, counsel for Plaintiff's declaration in support of Plaintiff's motion for service by publication fails to adequately describe the exhaustive measures undertaken to effectuate service. Instead, counsel for Plaintiff summarily states that he has "conducted several searches through various methods of search and programs colloquially known as 'skip-tracing' to locate the current addresses of the Defendants" and that "Plaintiff paid the Process Server to conduct investigations to locate the current address of the Defendants. The search provided no information of the actual presence of the Defendants or their family members." (Declaration of Anthony Bell Supp. Pl.'s Mot. ("Bell Decl."), ECF No. 29 at 22 ¶¶ 24, 25.) These conclusive statements are inadequate to grant the last resort of service by publication. Plaintiff must detail his "thorough, systematic investigation and inquiry conducted in good faith." Kott, 45 Cal. App. 4th at 1138. Nevertheless, the Court turns to Plaintiff's attempts to personally serve each of the six Unserved Defendants subject to the instant motions.

1.  Unserved Defendant Willard L. Jackson

Plaintiff has attempted to personally serve Mr. Jackson two times. (Mot. 2.) First, a process server attempted to personally serve Mr. Jackson at an address on Winslow Way in Spring, Texas. The process server he was informed by the resident that Mr. Jackson had moved eleven years prior. The process server also spoke with a neighbor who did not recognize Mr. Jackson's name. Second, Plaintiff contends ABCLegal, "performed an in-depth research investigation" and found an address for an apartment on McCue Road in Houston, Texas. (Id. at 3.) When a process server attempted to personally serve Mr. Jackson at this address, she spoke with a property manager and an on-site worker who both confirmed Mr. Jackson had moved out a long time ago and a new tenant was living in the apartment.

Plaintiff proffers he conducted a public record search on Lexis which supplied the unsuccessful Springs, Texas address and that the process server conducted an unspecified "in-depth investigation" which procured the unsuccessful Houston address. However, Plaintiff provides no other specific information that he or an agent, for example, engaged in "an inquiry of [Jackson's] relatives, friends, and acquaintances, or of his employer, and by investigation of appropriate city and telephone directories, the voters' register, and the real and personal property index in the assessor's office, near the defendant's last known location" Kott, 45 Cal.App.4th at 1137–38, or that he "contact[ed]" the co-defendant (who had been served) for the defendant's contact information," THC-Orange Cty. Inc, 2017 WL 2171185, at *2. See also Dunmore v. Dunmore, No. 2:11-cv-2867 MCE GGH PS, 2012 WL 4364454, at *2 (E.D. Cal. Sept. 20, 2012) (finding publication appropriate where plaintiffs' declaration demonstrated they had attempted to serve individual defendants several times by personal and substituted service and had also searched telephone directories, the internet, and real property records). The Court also notes that Plaintiff failed to follow up on all information proffered by the Lexis search, which procured a telephone number for Mr. Jackson. Further, Plaintiff makes no proffer he searched public court records to determine where Mr. Jackson was recently served in a separate action.

Plaintiff also argues his counsel emailed the summons to three emails listed for Mr. Jackson on Lexis and sent the summons to Willard L. Jackson's Facebook account via private

message on April 8, 2024. (Mot. 3.) It is unclear if Plaintiff is requesting alternative service of Mr. Jackson via email and Facebook message. If so, Plaintiff fails to establish that service by email or Facebook private message is reasonably calculated to provide actual notice to Mr. Jackson. Cal. Code. Civ. Prod. § 413.30. Plaintiff fails to provide any evidence showing the Facebook account or emails are controlled by Mr. Jackson or that Mr. Jackson receives messages through these channels. The Court acknowledges a Lexis report provides the three email addresses; however, Plaintiff does not proffer any history of communicating via any email with Mr. Jackson, or that the Facebook page is even that of the Defendant in this action. Further, these service attempts are not mentioned in Plaintiff's counsel's declaration, nor is any supporting evidence offered that either the emails or the private message were actually sent.

The Court recognizes Plaintiff has taken reasonable steps to effectuate service on Mr. Jackson, such as attempting personal service once at two addresses, inquiring with the residents and neighbors, and attempting to email and message the summons. However, for the foregoing reasons, the Court finds these efforts fall short of the diligence required by section 415.50(a). Because Plaintiff has not engaged in exhaustive attempts to locate Mr. Jackson, the Court denies Plaintiff's motion for service by publication in the Houston Chronicle, as that avenue of service is reserved only as a "last resort." See Watts, 10 Cal.4th at 749 n.5.

2. Unserved Defendant Robert Shumake

Plaintiff describes multiple attempts to personally serve Defendant Shumake between January 2024 and March 2024. However, these attempts are overshadowed by Plaintiff's assertion that Mr. Shumake, now known as "Bobby Shumake Japhia," has commenced a personal bankruptcy proceeding pursuant to Chapter 7 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Central District of California, case number 9:24-bk-10139-RC.

Plaintiff contends he has attempted to effect personal service on Mr. Shumake at an address that is listed in a copy of a Notice of Chapter 7 Bankruptcy and confirmed by Mr. Shumake himself during a bankruptcy proceeding. (Mot. 6-7; see also ECF No. 33 (providing a transcript of the meeting of the creditors).) Local Rule 159 requires that a party that learns of a bankruptcy filing must file a Notice within seven (7) days of learning of the filing. Plaintiff

confirms his counsel received a copy of the bankruptcy notice on February 27, 2024 and that his counsel was present at a meeting of the creditors on March 14, 2024.  Upon the Court's review of the docket in this case, Plaintiff has not filed any notice of bankruptcy of any Defendant in this action.  Further, Plaintiff did not inform the Court of Mr. Shumake's bankruptcy filing in response to the Court's March 28, 2024 order requiring Plaintiff to file a status report in this action. (ECF Nos. 15, 23.)  By failing to file a notice of bankruptcy, despite not only knowing of the bankruptcy, but participating in the proceedings *prior* to the Court's request for a status of each Defendant, Plaintiff again appears to flout Local Rules.

The Court will not address Plaintiff's attempts to personally serve Defendant Shumake at this time.  Rather, the Court shall order Plaintiff to file a notice of bankruptcy and set forth Plaintiff's position regarding whether the action against Defendant Shumake is subject to the automatic stay provision in 11 U.S.C. § 362 and whether the stay encompasses service of Mr. Shumake.

### 3. Unserved Defendant Nicole Birch

Plaintiff submits that he attempted to serve Ms. Birch at three separate addresses.  First, a process server attempted to effect personal service on Ms. Birch at an address on Caneridge Court in Marietta, Georgia on January 18, 2024.  (Mot. 11.)  The process server noted a vehicle with a license plate registered to Ms. Birch parked at the residence.  The process server spoke with a resident, who informed him that Ms. Birch had moved, and a neighbor, who stated the vehicle was used by someone other than Ms. Birch.  Plaintiff did not attempt further service or inquiry regarding the identity or relationship of the resident purportedly using Ms. Birch's car.

On January 24, 2024, Plaintiff attempted service at an address on Lake Drive in Gainesville, Georgia.  A neighbor confirmed to the process server that Ms. Birch resides at the address, but that Ms. Birch was out of town at the time.  The process server attempted to effect service three times within a one week timeframe on January 25, 2024, January 27, 2024, and January 31, 2024.  During the latter attempt, an unidentified individual stated they were a resident but that they did not know Ms. Birch.  No physical description of the resident is provided, nor does it appear that the process server requested the resident's identity.  Despite

confirmation of Ms. Birch's residency from a neighbor, it does not appear Plaintiff engaged in further inquiry of the residence.

On February 24, 2024, Plaintiff attempted service at an address on River Run in Roswell Georgia, which is listed for many businesses Ms. Birch is associated with, including her law firm. (Id. at 12.)  A resident informed the process server that Ms. Birch is not known, and a neighbor confirmed Ms. Birch is not a resident.

On April 8, 2024, counsel for Plaintiff emailed the summons to five email addresses listed on Lexis for Ms. Birch. (Id. at 12-13.)  Counsel for Plaintiff also emailed the summons to Ms. Birch's purported Facebook account via private message.  Again, Plaintiff does not request alternative service, nor does he provide a declaration or evidence of these emails and messages.

Although Plaintiff submits he made six attempts at personal service at three addresses and conducted a Lexis search of Ms. Birch, the Court finds these efforts fall short of the diligence required by section 415.50(a) for similar reasons as those for Mr. Jackson.  It is unclear if Plaintiff is requesting alternative service of Ms. Birch via email and Facebook message.  If so, the Court must deny the request for the same reasons previously described.  The Court also notes Plaintiff failed to attempt every address listed on the Lexis report, fails to indicate whether the listed phone number was contacted, and makes no proffer he attempted to search any other public avenues to locate Ms. Birch, including court records in recent litigation.

Plaintiff has submitted evidence that he has taken steps to personally serve Ms. Birch; however, the attempts are insufficient to show diligence required under section 415.50(a). See, e.g., Scottsdale Ins. Co. v. Buehner, No. 122CV00869JLTSAB, 2023 WL 2563648, at *6 (E.D. Cal. Mar. 17, 2023) (granting a motion for publication where "Plaintiff made ten (10) attempts at personal service, hired a skip trace team to assist in locating and serving Defendants…, filed a postal inquiry for change of address information from the U.S. Post Office, and unsuccessfully requested the Defendants' attorney of record in the underlying case to assist in serving his clients."). Thus, the Court finds Plaintiff has not adequately shown exhaustive efforts and reasonable diligence sufficient to support granting Plaintiff's motion to serve by publication. See Cal. Civ. Proc. Code § 415.50(a)(1); Watts, 10 Cal.4th at 749 n.5; THC-Orange Cty., 2017 WL

2171185, at *2.

### 4. Unserved Defendant 420 Real Estate, LLC

Plaintiff proffers that Defendant 420 Real Estate, LLC is a former limited liability company formed in Texas. (Mot. 13.) Plaintiff proffers that the Texas Secretary of State website states 420 Real Estate, LLC is inactive as of August 24, 2021. Plaintiff attempted to serve the LLC, but states "an address researched...was a bad address belonging to a different business (Cope Clinic as per Marisha Copeland at facility) in Houston, Texas." (Id.)

Plaintiff states Willard L. Jackson is the agent for process of service according to the Texas Secretary of State website and thus refers the Court to Plaintiff's attempts to serve Mr. Jackson individually as evincing reasonable diligence to serve 420 Real Estate LLC pursuant to section 415.50. (ECF No. 30 at 8-11.) As described above, the Court finds the two attempts of personal service on Mr. Jackson without any further proffer of diligence to be insufficient. Accordingly, the Court finds Plaintiff's efforts to serve 420 Real Estate, LLC fall short of the diligence required by section 415.50(a), for the same reasons Plaintiff's attempts to serve Defendant Jackson are insufficient.

### 5. Unserved Defendant Transatlantic Real Estate, LLC

Plaintiff proffers that Defendant Transatlantic Real Estate, LLC is a former limited liability company formed in California. (ECF No. 31 at 1-4.) Plaintiff cites California Corporation Code 17707.07(a)(2)(A)-(B), which states that causes of action against a member of a dissolved limited liability company are extinguished unless the claimant commences a proceeding to enforce the cause of action against that member at the earlier of the expiration of the statute of limitations applicable to the cause of action or within four years after the effective date of the dissolution.

The Court briefly addresses Plaintiff's argument regarding the applicable statute of limitations in this case. Plaintiff argues:

> With this claim, the statute of limitations for such a claim would have been the critical date of December 30, 2023 for filing an action due to the SEC violations since the complete facts constituting Violations of Section 17(a) of the Securities Act; Violations of Section 10(b) of the Exchange Act and Exchange Act

15

>Rule 10b-5; Violations of Section 5(a) and (c) of the Securities Act; Violations of Section 5(a) and (c) of the Securities Act; and Violations of Section 4A(a)(5) of the Securities Act and Rules 301(c)(2) thereunder including the fact that the defendants intended to deceive and verifiably violated SEC regulations were sufficiently known by Plaintiff Jeffrey Carter when the SEC order became public on December 30, 2021. As per Merck & Co. v. Reynolds, this was the "critical date" because Plaintiff Jeffrey Carter and other class members did not have sufficient information to plead scienter until the SEC order put the company's prior actions and statements in a new context, revealing that ostensibly innocuous statements and filings were actually intentional misrepresentations. That being said, the statute of limitations for this lawsuit has not expired as of the time of the filing of this lawsuit, December 27, 2023 nor has the four year date from the dissolution of Transatlantic Real Estate, LLC, which would be July 8, 2025.

(Mot. 15-16.)

Federal securities fraud claims "may be brought not later than the earlier of (1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation." 28 U.S.C. § 1658. Strategic Diversity, Inc. v. Alchemix Corp., 666 F.3d 1197, 1205 (9th Cir. 2012). "In Merck & Co., Inc. v. Reynolds, the Court held that 'discovery as used in [28 U.S.C. § 1658] encompasses not only those facts the plaintiff actually knew, *but also those facts a reasonably diligent plaintiff would have known*.' " Id. at 1206 (citing 559 U.S. 633 (2010)) (emphasis added). While Plaintiff heavily relies on a SEC complaint publicly filed on September 20, 2021, Plaintiff's motion only argues that Plaintiff actually discovered the facts constituting the SEC violations when an unidentified SEC order became public on December 30, 2021.

Assuming Plaintiff's federal securities claims are not time-barred, Plaintiff states he researched how to serve the address listed for Transatlantic Real Estate, LLC; however, the address is a UPS store in Grosse Pointe Farm, Michigan with no unit number listed. (Mot. 16.) Plaintiff provides a Lexis report for Transatlantic Real Estate, LLC which lists Nicole Birch as the Chief Executive Officer. (ECF No. 30 at 12.) Plaintiff thus refers the Court to his attempts to serve Ms. Birch individually as evincing reasonable diligence to serve Transatlantic Real Estate, LLC pursuant to section 415.50. As described above, the Court finds Plaintiff's attempts to personally serve Ms. Birch individually to be insufficient. Accordingly, the Court finds Plaintiff's efforts to serve Transatlantic Real Estate, LLC fall short of the diligence required by

section 415.50(a), for the same reasons previously described.

   6. <u>Unserved Defendant BANGI, Inc.</u>

  Plaintiff proffers that BANGI, Inc. is a Nevada corporation that was dissolved on June 1, 2021. (Mot. 17; ECF No. 30 at 14-16; ECF No. 31 at 5-6.) The Court notes the Nevada Secretary of State website states BANGI, Inc.'s status is "revoked" but does not state the date of such status.[4] However, Plaintiff proffers a Lexis report that provides that the corporation was revoked on June 1, 2021. (ECF No. 30 at 15.)

  Plaintiff cites Nevada Revised Statute § 78.585, which provides that dissolution of a corporation does not impair a cause of action against the dissolved Nevada corporation if it is:

> commenced within 2 years after the date of the dissolution with respect to any remedy or cause of action in which the plaintiff learns, or in the exercise of reasonable diligence should have learned of, the underlying facts on or before the date of dissolution, or within 3 years after the date of dissolution with respect to any other remedy or cause of action. Any such remedy or cause of action not commenced within the applicable period is barred.

NRS § 78.585; <u>but see</u> <u>Urb. Outfitters, Inc. v. Dermody Operating Co., LLC</u>, No. 321CV00109MMDCLB, 2023 WL 9284776, at *4 (D. Nev. Dec. 7, 2023), <u>motion to certify appeal granted,</u> No. 321CV00109MMDCLB, 2024 WL 915325 (D. Nev. Mar. 4, 2024) (holding that "NRS § 78.585 imposes a time bar on post-dissolution actions after three years regardless of when defects were discovered or the statutes of limitation applicable to underlying causes of action."). Caselaw therefore currently supports Plaintiff's argument that his claims against BANGI, Inc. are timely brought within three years of the corporation's proffered dissolution date.

  Plaintiff contends Nicole Birch is "advertised in Wall Street Journal and Bloomberg," as the Chief Executive Officer of BANGI, Inc. (Mot. 17-18; ECF No. 30 at 15, 16.) The Court

---

[4] <u>See</u> <u>Business Search: BANGI, Inc.</u>, https://esos.nv.gov/EntitySearch/BusinessInformation (last visited May 17, 2024). Courts may take judicial notice of "a fact that is not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Courts may take judicial notice of information displayed on government websites where neither party disputes the accuracy of the information contained therein. <u>Daniels-Hall v. Nat'l. Educ. Ass'n</u>, 629 F.3d 992, 998-99 (9th Cir. 2010). Specifically, Courts routinely take judicial notice of information contained on a Secretary of State's website. <u>See</u> <u>No Cost Conf., Inc. v. Windstream Commc'ns, Inc.</u>, 940 F. Supp. 2d 1285, 1296 (S.D. Cal. 2013); <u>Gerritsen v. Warner Bros. Ent. Inc.</u>, 112 F. Supp. 3d 1011, 1034 (C.D. Cal. 2015); <u>L'Garde, Inc. v. Raytheon Space & Airborne Sys.</u>, 805 F. Supp. 2d 932, 937 (C.D. Cal. 2011).

1 notes the undated and unverified Wallstreet Journal printout provided by Plaintiff provides a
2 company address for BANGI, Inc. in Bloomfield Hills, Michigan. (ECF No. 30 at 14.) The
3 Nevada Secretary of State website and Plaintiff's proffered Lexis printout provide an address in
4 Carson City, Nevada for the registered agent named "Taylor" for BANGI, Inc. (ECF No. 31 at
5 5; ECF No. 30 at 15.) Plaintiff fails to state whether he attempted to effect service on BANGI,
6 Inc. at either of these addresses.

7 Plaintiff briefly notes two domestic officers are named as directors of BANGI, Inc.: Neil
8 Parsan and Hill Harper, whose listed addresses are the previously described UPS store in Grosse
9 Pointe Farms, Michigan. (See ECF No. 31 at 5.) The Court notes Willard Jackson is also named
10 as a director and another individual, Richard Shykora, is named as the president, secretary, and
11 treasurer. Other than Mr. Jackson, Plaintiff fails to state whether he attempted to locate any of
12 these individuals to either locate Ms. Birch or otherwise effect service on BANGI, Inc.

13 Plaintiff contends he has attempted to effectuate service on BANGI, Inc. through Nicole
14 Birch. (ECF No. 29 at 17-18.) However, Nicole Birch is not listed as an officer of BANGI, Inc.
15 on Nevada's Secretary of State website, nor on Plaintiff's proffered Lexis Report. Thus, it does
16 not appear Nicole Birch is a proper individual to effectuate service of process for BANGI, Inc.
17 Even if Plaintiff verifies the information from the Bloomberg and Wall Street Journal printouts,
18 the Court finds Plaintiff's attempts to personally serve Ms. Birch individually to be insufficient
19 for the reasons previously stated. Accordingly, the Court finds Plaintiff's efforts to serve
20 BANGI, Inc. fall short of the diligence required by section 415.50(a), for the same reasons
21 previously described.

**D.     Motion to Extend the Time to Complete Service**

23 On April 26, 2024, Plaintiff filed a motion for leave to enlarge time for service by 90
24 days. (Mot. EOT.) Plaintiff's request for extension is based in large part for the need to allow
25 service by publication. (Id. at 19-20.) As detailed, the Court denies Plaintiff's motion for
26 service by publication. However, based on the above record demonstrating efforts by Plaintiff to
27 serve the Unserved Defendants, the Court finds good cause to extend the time to complete
28 service in this action. Fed. R. Civ. P. 4(m). Because Plaintiff initiated this action over 140 days

ago, the Court shall extend the deadline to diligently serve each Unserved Defendant by sixty days, as opposed to Plaintiff's requested ninety days. The Court shall require that any renewed motion for service by publication that cures the deficiencies identified herein be filed within the sixty-day extension of time.

## V.

## CONCLUSION AND ORDER

Accordingly, IT IS HEREBY ORDERED that:

1. The hearing set for May 28, 2024 is VACATED;

2. The Court VACATES Defendant Petrescu's Motion to Deny Plaintiff, Jeffrey Carter's Second Application for Service by Publication filed on April 17, 2024 (ECF No. 36) and construes it as an opposition to Plaintiff's motion for service by publication;

3. Plaintiff's second motion to serve Defendants Willard L. Jackson, Robert Shumake, Nicole T. Birch, 420 Real Estate, LLC., Transatlantic Real Estate, LLC, and BANGI, Inc. by publication, (ECF No. 29, 30, 31, 32, 33), is DENIED without prejudice;

4. Plaintiff shall file a notice of bankruptcy in accordance with Local Rule 159 **no later than 7 days after entry of this order**. The notice shall address whether the claims in this action against Defendant Shumake are subject to the automatic stay pursuant to 11 U.S.C. § 362;

5. Plaintiff's motion to extend the service deadline (ECF No. 38), is GRANTED IN PART;

6. The deadline for Plaintiff to complete service on Defendants Willard L. Jackson, Robert Shumake, Nicole T. Birch, 420 Real Estate, LLC., Transatlantic Real Estate, LLC, and Bangi, Inc., is extended for **sixty (60) days** after the entry of this order. If Plaintiff files a renewed motion for service of publication within this extension of time, he must demonstrate that he has performed reasonable diligence in attempting to serve each Defendant and must submit independent

Case 1:23-cv-01775-KES-SAB   Document 40   Filed 05/23/24   Page 20 of 20

evidentiary support that a cause of action exists against each Defendant; and

7. Failure to comply with this order may result in the issuance of sanctions, up to and including dismissal of this action as required by Rule 4(m) of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

Dated: **May 23, 2024**

_____
UNITED STATES MAGISTRATE JUDGE

20