505 Harper Dr
Algonquin, IL 60102
847.873.5335

June 5, 2024

FILED

JUN 10 2024

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| JEFFREY CARTER,<br><br>Plaintiff,<br><br>v.<br><br>WILLARD L. JACKSON, et al.,<br>Defendants. | Case 1:23-cv-01775-KES-SAB<br><br>MOTION FOR LEAVE TO AMEND ANSWER<br><br>Judge: **Kirk E. Sherriff** |

**MOTION FOR LEAVE TO AMEND ANSWER**

Defendant Vincent Petrescu, appearing pro se, hereby moves the Court for leave to file an amended answer pursuant to Federal Rule of Civil Procedure 15(a)(2), Local Rule 137(c), and the Court's Orders (ECF No. 41 and ECF No. 48).

1  In accordance with the Court's Order (ECF No. 48), Defendant Petrescu seeks

2  permission to amend the answer originally submitted on February 12, 2024. The

3  proposed amended answer is attached hereto as Exhibit 1, as required by Local Rule

4  137(c).

5

6  Defendant makes this motion in good faith and not for the purpose of delay. Granting

7  leave to amend will not unduly prejudice Plaintiff, as this litigation remains at an

8  early stage. The amendments are intended to clarify Defendant's defenses based on

9  additional research conducted since the original answer was filed.

10

11  For these reasons, Defendant Vincent Petrescu respectfully requests that the Court

12  grant leave to file the amended answer attached as Exhibit 1.

13

14  [signature]

15  Respectfully submitted,

16  /s/ Vincent Petrescu

17  Vincent Petrescu

18  Defendant, Pro Se

19
20
21

# EXHIBIT 1

## I. The Parties Filing This Answer to the Complaint

Provide the information below for each defendant filing this answer or other response to the allegations in the plaintiff's complaint. Attach additional pages if needed.

| | |
|---|---|
| *Name* | *Vincent Petrescu* |
| *Street Address* | *505 Harper Dr* |
| *City and County* | *Algonquin, Mc Henry* |
| *State and Zip Code* | *Illinois, 60102* |
| *Telephone Number* | *847.873.5335* |
| *E-mail Address* | *Vincent.Petrescu@gmail.com* |

## II. The Answer and Defenses to the Complaint

### A. Answering the Claims for Relief

On a separate page or pages, write a short and plain statement of the answer to the allegations in the complaint. Number the paragraphs. The answer should correspond to each paragraph in the complaint, with paragraph 1 of the answer corresponding to paragraph 1 of the complaint, etc. For each paragraph in the complaint, state whether: the defendant admits the allegations in that paragraph; denies the allegations; lacks sufficient knowledge to admit or deny the allegations; or admits certain allegations but denies, or lacks sufficient knowledge to admit or deny, the rest.

*See Answers in Exhibit A - attached to this Motion.*

### B. Presenting Defenses to the Claims for Relief

Write a short and plain statement identifying the defenses to the claims, using one or more of the following alternatives that apply.

1. The court does not have subject-matter jurisdiction over the claims because *(briefly explain why there is no federal-question jurisdiction or diversity-of-citizenship jurisdiction; see the complaint form for more information)*

*Class Action Fairness Act of 2005 (CAFA), pub.l. no. 109-2, 119 stat. 4, under which any member of a class of plaintiffs may proceed in federal court if the member can establish that he or she is a citizen of a state different from any defendant in a class action having a matter in controversy exceeding $5 million. 28 u.s.c. §1332(d)(2). see also Dancel v. Groupon, inc., 940 f.3d 381, 383 (7th cir. 2019)" source: iicle.com*

    A. *Both plaintiff Jeffery Carter and defendant Transatlantic Real Estate are citizens of California, therefore there is no diversity-of-citizenship, unless the Plaintiff amends the Compliant to remove Transatlantic.*

    B. *Also, the amount in controversy is not exceeding $5 million.*

2. The court does not have personal jurisdiction over the defendant because *(briefly explain)*

*In Rivelli v. Hemm, wherein the court indicated that for a non-California resident officer to be under California's jurisdiction, there should be evidence of fraudulent or tortious misconduct directed towards the forum. In the absence of such evidence, the court cannot assert case-linked personal jurisdiction (Rivelli v. Hemm, 67 Cal.App.5th 380 (2021)) -*

*Also, (Mihlon v. Superior Court, 169 Cal.App.3d 703 (1985)). This principle is also highlighted in Mihlon v. Superior Court which states that corporate officers' acts are acts of the corporation and cannot be attributed to them as individual acts establishing personal jurisdiction, unless there is a direct showing of them acting in other than their official capacities.*

**Petrescu's settlement with the SEC were not predicated on allegations of fraud.**

3. The venue where the court is located is improper for this case because *(briefly explain)*

*There is an active case (SEC vs. Shumake et al.) in the UNITED STATES DISTRICT COURT EASTERN DISTRICT OF MICHIGAN SOUTHERN DIVISION where the majority of evidence is located.*

4. The defendant was served but the process—the form of the summons— was insufficient because *(briefly explain)*

5. The manner of serving the defendant with the summons and complaint was insufficient because *(briefly explain)*

_____

6. The complaint fails to state a claim upon which relief can be granted because *(briefly explain why the facts alleged, even if true, are not enough to show the plaintiff's right to recover)*

*The complaint fails to state a claim against Petrescu and TruCrowd, even though both parties entered into a settlement with the SEC without admitting or denying any wrongdoing.*

*In an active case in a Michigan Federal Court (SEC vs. Shumake Jr.), where Petrescu is requesting the Court to vacate the judgments. This request is based on Judge Leitman's decision that Shumake did not have control over statements of the two offerings. The settlements with the SEC were predicated on the assertion that Shumake was controlling the offerings and that Petrescu failed to disclose his involvement to investors.*

7. Another party *(name)* needs to be joined (added) in the case. The reason is *(briefly explain why joining another party is required)*

a. If the basis for subject-matter jurisdiction is diversity of citizenship, state the effect of adding the other party:

> *Both Plaintiff Carter and Transatlantic Real Estate are citizens of California. The Plaintiff just stated that damages sought from this other party is $5 million. It provided no accounting for such a claim.*

    b.    If the claim by this other party is based on an alleged violation of a federal constitutional or statutory right, state the basis.

> *None.*

**C.**    **Asserting Affirmative Defenses to the Claims for Relief**

Identify an affirmative defense or avoidance that provides a basis for the defendant to avoid liability for one or more of the plaintiff's claims even if the basis for the claim is met. Any affirmative defense or avoidance must be identified in the answer. Include any of the following that apply, as well as any others that may apply.

The plaintiff's claim for *(specify the claim)* is barred by *(identify one or more of the following that apply)*:

1. Accord and satisfaction *(briefly explain)*
2. Arbitration and award *(briefly explain)*
3. Assumption of risk:
4. Contributory or comparative negligence of the plaintiff *(briefly explain)*
5. Duress *(briefly explain)*
6. Estoppel *(briefly explain)*
7. Failure of consideration *(briefly explain)*
8. Fraud *(briefly explain)*
9. Illegality *(briefly explain)*
10. Injury by fellow employee *(briefly explain)*
11. Laches (Delay) *(briefly explain)*
12. License *(briefly explain)*
13. Payment *(briefly explain)*
14. Release *(briefly explain)*
15. Res judicata *(briefly explain)*

> *There is the same case active in a MI District Court. The Plaintiff's counsel copied verbatim, with some changes: Instead COUNT (I to VIII) - as in the SEC case, Mr Bell replaced CAUSE OF ACTION and used arabic numerals instead roman numerals. Then Mr. Bell*

*added eight more causes of action without mentioning to what defendant they are to be applied to. Then in the section PRAYER OF RELIEF Mr. Bell is copying (verbatim) the first five items from the section RELIEF REQUESTED (the SEC case) and added nine more.*

---

16. Statute of frauds *(briefly explain)*
17. Statute of limitations *(briefly explain)*
18. Waiver *(briefly explain)*
19. Other *(briefly explain)*

### D. Asserting Claims Against the Plaintiff (Counterclaim) or Against Another Defendant (Cross-Claim)

For either a counterclaim against the plaintiff or a cross-claim against another defendant, state briefly the facts showing why the defendant asserting the counterclaim or cross-claim is entitled to the damages or other relief sought. Do not make legal arguments. State how each opposing party was involved and what each did that caused the defendant harm or violated the defendant's rights, including the dates and places of that involvement or conduct. If more than one counterclaim or cross-claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

1. The defendant has the following claim against the plaintiff *(specify the claim and explain it; include a further statement of jurisdiction, if needed)*:

2. The defendant has the following claim against one or more of the other defendants *(specify the claim and explain it; include a further statement of jurisdiction, if needed)*:

3. State briefly and precisely what damages or other relief the party asserting a counterclaim or cross-claim asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons that are alleged to entitle the party to actual or punitive money damages.

  a. The defendant asserting the counterclaim or cross-claim against *(specify who the claim is against)* _____
alleges that the following injury or damages resulted *(specify)*:

  b. The defendant seeks the following damages or other relief *(specify)*:

### III. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this answer: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the answer otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: June 5, 2024.

Signature of Defendant

/s/ VINCENT PETRESCU

EXHIBIT A.  Section II. A: **Answering the Claims for Relief**

86. Petrescu owned and, as TruCrowd's owner and CEO, controlled the activities of TruCrowd.

*86: **The defendant admits the allegations.***

87. Petrescu, acting on behalf of TruCrowd, was responsible for selecting which issuers and individuals could use TruCrowd's platform to conduct crowdfunding offerings.

*87: **The defendant partially admits, partially denies.** Denies the second part of the allegation as individuals can not use a funding portal for crowdfunding. Only US companies can.*

88. Petrescu, acting on behalf of TruCrowd, engaged third party escrow agents to hold investor funds.

*88: **The defendant denies the allegations.** The "escrow agent" is not the type of escrow agent commonly known in the business world.  Reg CF requires a Qualified Third Party 17 CFR 227.303(e)(2) to hold investors funds. These QTP have to be a US financial Institution 17 CFR 227.303(e)(2)(i) and 17 CFR 227.303(e)(2)(ii)*

89. In exchange for its services in connection with the Transatlantic Real Estate and

420 Real Estate crowdfunding offerings, TruCrowd received $91,679 and $48,412, Respectively.

*89: **The defendant admits the allegations**.*

90. Petrescu, acting on behalf of TruCrowd, assisted issuers and their affiliated individuals with preparing and filing Forms C and offering statements.

*90: **The defendant denies the allegations**. Petrescu/TruCrowd had the obligation to make sure that the documents filed are fully completed and gave feedback on what is missing [17 CFR 227.201]. In no way Petrescu/TruCrowd rendered securities legal services.*

91. Petrescu, acting on behalf of TruCrowd, permitted the Transatlantic Real Estate and 420 Real Estate offerings to proceed despite multiple warning signs of possible fraud or other harm to investors.

*91: **The defendant denies the allegations**. The alleged warning could have a meaning IF Shumake was controlling the offerings. He was not. See Exhibit B - Affidavit of Vicent Petrescu.*

92. Petrescu, acting on behalf of TruCrowd, worked with both Shumake and Birch to file the Transatlantic Real Estate Form C and offering statement.

*92: **The defendant denies the allegations**. See answer 90.*

93. According to Petrescu, Birch told him that she was the sole officer of Transatlantic Real Estate and that Shumake only provided marketing services. However, Shumake routinely coordinated with Petrescu to address nonmarketing matters for the company, such as investor communications and lining up a transfer agent.

*93: **The defendant partially admits the allegations**. Admits: Birch (a securities lawyer) signed documents where Birch was the only officer/director of the company. Denies the remaining allegations.*

*Investor communications are marketing matters.*

*Having an agent transfer is a marketing matter too (it makes investors more confident that the issuer has the capability to keep good accounting of the investor's records). It is also a compliance matter.*

94. Petrescu did not question why the Transatlantic Real Estate offering statement omitted any mention of Shumake's involvement with the company and the offering.

*94: **The defendant denies the allegations**. Petrescu did question that, however, Shumake was not a controlling person and only controlling persons (officers, directors, individuals playing those roles) need to be presented on the offering documents.*

95. In November 2018, two months after the Transatlantic Real Estate offering

opened, Birch forwarded an email to Petrescu from an individual who had provided marketing services to Birch and Shumake in connection with the Transatlantic Real Estate offering.

95: **The defendant admits the allegations.**

96. This individual's email to Birch and Shumake complained that they owed him money for services he had performed on the offering, stated that he had referred Transatlantic Real Estate for collections, and warned them of the potential impact of "SEC, Bad Actor Check."

96: **The defendant denies the allegations.** *The said email was from another marketing vendor that wanted a commission percentage based from the sale of the securities. Only broker dealers and intermediaries (such TruCrowd) can be paid a commission from the sale of such securities. The sender of the email was violating securities laws by asking (and receiving) such a type of payment. In the same time, the issuer would have been in violation of securities law if they had made such payment.*

97. These emails required action by Petrescu, and through him, by TruCrowd. Regulation Crowdfunding [17 C.F.R. §§227.301(c)] requires funding portals and their associated persons to conduct a background and securities enforcement regulatory history check (commonly referred to as a "bad actor" check) on each issuer and the issuer's officers and directors (and any persons performing a similar function) to determine if they are subject to disqualification from participating in crowdfunding under Rule 503 of Regulation Crowdfunding, and to remove an offering from their platform if they become aware of information after they have granted access that causes

them to reasonably believe that the issuer or the offering presents the potential for fraud or otherwise raises concerns about investor protection.

*97: **The defendant admits the allegations**. Petrescu/TruCrowd did perform "bad actor" checks on Birch - the sole director/officer of the company. And on the company itself. Fully compliant with 17 C.F.R. §§227.301(c). Shumake's role did not meet the controlling test (See Exhibit B - Affidavit of Vicent Petrescu) therefore he was not subject to such a "bad actor" check.*

98. Even after receiving this email, Petrescu never requested a bad actor check or ran a background check on Shumake. If Petrescu had done so, he would have learned of Shumake's criminal history.

*98: **The defendant denies the allegations**. See the text referenced by Plaintiff in allegation #97:*

> *Regulation Crowdfunding [17 C.F.R. §§227.301(c)] requires funding portals and their associated persons to conduct a background and securities enforcement regulatory history check (commonly referred to as a "bad actor" check) on each issuer and the issuer's officers and directors (and any persons performing a similar function) to determine if they are subject to disqualification from participating in crowdfunding under Rule 503 of Regulation Crowdfunding.*

*Shumake did not meet the criteria to be subject to "bad actor" check.*

99. A short time later, in December 2018, while the Transatlantic Real Estate

offering was still raising funds from investors, Petrescu referred Birch and Shumake to an experienced securities attorney, to explore the possibility of a Regulation A offering for Bangi.

*99: **The defendant partially admits the allegations**. It was just a courtesy introduction for another project that Petrescu was not involved in.*

100. The securities attorney emailed Petrescu on December 14, 2018, after meeting with Shumake and Birch.

*100: **The defendant admits the allegations**.*

101. The 2017 news article read, in part, as follows:
a. "[Michigan Attorney General] Schulte says Shumake was behind a scheme to cheat people who were trying to save their homes from Foreclosure."
b. "The attorney general's office investigated and recommended a warrant for Shumake's arrest in 2015, but Robert Shumake was in Africa."
c. "After filing for personal bankruptcy to the tune of more than $3 million, Shumake was busy posting on Facebook about his African humanitarian work and even turned up on the Tanzanian TV news as an American investor who ran a railroad."
d. "Last year he was caught in California with $121,000 cash in his trunk and large sums of marijuana. He's got an active arrest warrant in that case."

*101. **The defendants lack sufficient knowledge to admit or deny**.*

102. Despite admitting that he needed "to search some more," Petrescu did not follow up on this red flag. Instead, Petrescu allowed the Transatlantic Real Estate offering to continue on TruCrowd's platform.

1  *102: **The defendant partially admits the allegations**. The email would have been a red flag ONLY if Shumake was a controlling person. He was not. Petrescu did talk to Birch - the sole officer of Transatlantic about that article.*

103. Then, in or about April 2019, Petrescu agreed to work with Shumake again and to host the 420 Real Estate offering on TruCrowd's portal.

*103: **The defendant denies the allegations**. Petrescu via TruCrowd agreed to work with Jackson as the owner and sole director/officer of 42o Real Estate LLC.*

104. Petrescu however, did not request a bad actor check on Shumake or otherwise investigate Shumake's past before agreeing to host the 420 Real Estate offering.

*104: **The defendant admits the allegations**. A bad actor check was not needed as Shumake was not a controlling person of this issuer.*

105. The 420 Real Estate offering statement was nearly identical to the Transatlantic Real Estate offering statement.

*105: **The defendant partially denies the allegations**. Nearly is not a precise term. True, both issuers followed a similar business model. There are lots of businesses out there that have similar or exact business models. In addition, TruCrowd provides a template (developed by the SEC - https://www.sec.gov/files/formc.pdf) for the*

*Offering Statement, therefore the issuers' offering statements had the same sections and same flow of information.*

106. Nevertheless, Petrescu did not question the representations in those documents that Jackson was the issuer's sole officer or the omission of any mention of Shumake's involvement with the issuer or the offering.

*106: **The defendant denies the allegations**. Petrescu/TruCrowd did verified the information provided by the issuer and Jackson and according to Regulation Crowdfunding rules [17 CFR 227.301(a)]*

> "an intermediary may rely on the representations of the issuer concerning compliance with these requirements unless the intermediary has reason to question the reliability of those representations;"

*that allows the funding portal (TruCrowd) to rely on the information provided by the issuer, and decided that Shumake was not controlling the offering, hence no bad actor check was needed for Shumake.*

107. During and after both the Transatlantic Real Estate offering and the 420 Real Estate offering, Petrescu, and through him TruCrowd, received a series of investor complaints about both the Transatlantic Real Estate and the 420 Real Estate offerings. Investors asked whether the offerings were scams. They complained to Petrescu that the issuers were not responding to inquiries. Some investors complained that they had not received certificates for their investments. Others asked for the refund of their investments. All these emails should have raised questions for Petrescu whether the offerings presented the risk of fraud or investor harm, especially in light of the email exchanges described above.

*107: **The defendant denies the allegations**. The complaints were of technical nature (did not receive the certificates for their investments) - such certificates were emailed by the transfer agent, or TruCrowd could access the Ceremonial Certificate from the Qualified Third Part (at that time was Prime Trust LLC) and TruCrowd email them a such copy. Also there were complaints that the issuer was not returning the calls - fast enough (another imprecise term) - TruCrowd reached the issuer asking them to stay in communication with their investors, most of the time 420 Real Estate did that. However, not good customer service (investor relations) procedures is not a sign of fraud.*

108. Petrescu responses to the investor emails was to assure investors that the offerings were not scams, and to represent that he had run bad actor checks.

*108: **The defendant admits the allegations**. Petrescu/TruCrowd run the "bad actor" checks on the entities required by Regulation Crowdfunding Regulation Crowdfunding [17 C.F.R. §§227.301(c)]*

109. Petrescu forwarded some of the investor complaints to Shumake, Jackson, and Birch.

1  *109: **The defendant admits the allegations**. Those complaints were investor's*
2  *complaints that needed to be addressed from both compliance perspectives (by Birch*
3  *and Jackson) and from a marketing perspective (keeping the investors happy by*
4  *timely communicating with them).*

6  110. On April 16, 2020, Jackson informed Petrescu that Shumake had acted
7  improperly. Jackson told Petrescu that it is "very disappointing to learn that you took
8  direction (without my knowledge) from Robert Shumake to redirect the approval of
9  funds process for 420 Real Estate crowdfund. He is not a party to my agreement with
10 you or [TruCrowd]." In a response on the same day copying Petrescu, Shumake
11 stated that the 420 Real Estate offering was designed to support Bangi, Jackson's
12 business, Ebony, and the "263k used by me to seed the operation." Yet, this email did
13 not prompt Petrescu to question why Bangi, Ebony, and payments to Shumake were
14 omitted from the 420 Real Estate Form C and offering statement.

16 *110: **The defendant denies the allegations**. The email from Jackson shows beyond*
17 *doubt that Shumake was not a controlling person. Petrescu has followed the*
18 *established procedures. The use of funds section of the 420 Real Estate LLC had a*
19 *section where funds for Marketing were disclosed.*

21 111. On April 16, 2020, when Petrescu received Jackson's email, more than $20,000
22 of investor funds was being held in escrow. Over the next several weeks,
23 approximately $20,000 in additional investor money was invested and received into
24 the escrow Account.

26 *111: **The defendants lack sufficient knowledge to admit or deny**.*

112. On June 8, 2020, Birch told Petrescu that Shumake had allowed a third party access to non-public information related to Transatlantic Real Estate investors, and instructed Petrescu that, going forward, he should only take direction from Birch. Petrescu responded that, until recently, he understood Shumake to be a representative of Transatlantic Real Estate and Birch's agent.

*112: **The defendant admits the allegations**. The email mentioned is proof that Shumake had no controlling power of Transatlantic Real Estate. And that Birch has 100% of the issuer's controlling power.*

113. Despite these red flags, Petrescu permitted the 420 Real Estate offering to proceed on the TruCrowd platform until it stopped accepting investors in June 2020.

*113: **The defendant denies the allegations**. The alleged red flags would have had any meaning if Shumake was a controlling person of any of those issuers. He was not.*

114. Petrescu continued to work with Shumake after June 2020. He emailed Shumake about investor complaints. He also networked with Shumake in an effort to arrange a crowdfunding offering by at least one other issuer.

*114: **The defendant denies the allegations**. Petrescu had meetings with Shumake - because of his marketing skills - but there was no other work done.*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 5, 2024 a true and correct copy of the foregoing MOTION FOR LEAVE TO AMEND ANSWER was sent to the Plaintiff's counsel, Mr. Anthony Bell, via email.

/s/ Vincent Petrescu, Pro Se

June 5, 2024

505 Harper Dr, Algonquin, IL 60102
847.873.5335
vincent.petrescu@gmail.com